IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOSHUA CORNELIUS, | § | CASE NO. 17-20168 |
| | § | CHAPTER 13 |
| DEBTOR. | § | |

**RESPONSE IN SUPPORT OF CHAPTER 13 TRUSTEE'S MOTION
TO DISMISS OR CONVERT**
(Related to Dkt. Nos. 28, 30)

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Gulf Coast Bank & Trust Company ("GCBC"), a creditor of the Debtor Joshua Cornelius ("Debtor"), and files this Response ("Response") in Support of Chapter 13 Trustee's Motion to Dismiss or Convert [Dkt No. 28]. In support of the Response, GCBC states as follows:

1. On or about April 30, 2014, Debtor entered into a Guaranty with GCBC whereby Debtor agreed to be jointly and severally liable to GCBC for all obligations of C VAC, LLC ("C-VAC") arising under the Term Promissory Note entered into between GCBC and C-VAC. A true and correct copy of the Guaranty is attached hereto and incorporated herein as **Exhibit 1**.

2. C-VAC subsequently defaulted under the Term Promissory Note, and C-VAC and Debtor have failed to remit payment for the unpaid balance under the Term Promissory Note.

3. On or about July 1, 2016, Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division; Case No. 16-20247.

4. On August 11, 2016, GCBC filed Proof of Claim #4-1 in Debtor's bankruptcy case, Case Number 16-20247, whereby GCBC claimed $604,100.31 pursuant to the personal

Guaranty signed by the Debtor. A true and correct copy of the GCBC's Proof of Claim #4-1 filed in Debtor's previous bankruptcy filing, Case Number 16-20247, is attached hereto and incorporated herein as **Exhibit 2**.

5. In conjunction with or subsequent to filing this Response, GCBC will file a proof of claim in this bankruptcy case asserting a claim in the amount of $653,962.05("Claim Amount") pursuant to the Guaranty. GCBC expects that a portion of the Claim Amount will be reduced by the liquidation of the equipment securing the Term Promissory Note. However, GCBC does not expect that the liquidation of the equipment will reduce the Claim Amount below the limitation established in Section 109(e) of the Bankruptcy Code.

WHEREFORE, GCBC respectfully requests that this Court: (i) enter an order granting the Trustee's Motion to Dismiss or Convert; and (ii) for such other and further legal and equitable relief as the Court deems just and proper.

Dated: June 5, 2017

Respectfully Submitted,

HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 479-9758
(512) 226-7318 (fax)
lynn.butler@huschblackwell.com

By: */s/ Lynn Hamilton Butler*
Lynn Hamilton Butler
Texas State Bar No. 03527350

ATTORNEYS FOR GULF COAST BANK & TRUST COMPANY

## CERTIFICATE OF SERVICE

This will certify that on this 5th day of June, 2017, a true and correct copy of the foregoing pleading was served, via the Court's CM/ECF e-mail notification system.

*/s/Lynn H. Butler*
Lynn H. Butler

# GUARANTY

**Obligor:**  C VAC, LLC
874 County Rd 461
Alice, TX 78832

**GCBC:**  **Gulf Coast Bank and Trust Company**
TIN: 72-1167423
1110 Highway 190, 2nd Floor
Covington, LA 70433

**Guarantor:**  Joshua D. Cornelius

_[signature]_

**DEFINITIONS.** The following terms shall have the following meanings when used in this Agreement. The word "Agreement" means this Guaranty as this Guaranty may be amended or modified from time to time. The word "Guarantor" means individually, collectively and interchangeably Joshua D. Cornelius and all other persons guaranteeing payment and satisfaction of Obligor's Obligations as hereinafter defined. The word "GCBC" means Gulf Coast Bank and Trust Company, TIN: 72-1167423, its successors and assigns, and any subsequent holder or holders of Obligor's Obligations. The word "Obligor" means C VAC, LLC. The words "Obligations" means individually, collectively, interchangeably and without limitation (i) all amounts owing by Obligor under that certain Term Promissory Note of even date between Obligor and GCBC in the original principal amount of $750,000 (the "Note") including all repurchase obligations thereunder, (ii) all costs and expenses incurred by GCBC in connection with the collection of all or any part of the indebtedness and obligations owing by Obligor under the Note, or the protection of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, and (iii) all renewals, extensions, modifications and rearrangements of the indebtedness and obligations owing by Obligor under the Note.

**GUARANTEE OF OBLIGATIONS. Guarantor hereby absolutely and unconditionally agrees to, and by these presents does hereby, guarantee the prompt and punctual payment, performance and satisfaction of Obligor's present and future Obligations in favor of GCBC, as outstanding from time to time.** Payments made on Obligor's Obligations will not discharge or diminish the obligations and liability of Guarantor under this Agreement for any remaining and succeeding Obligations of Obligor in favor of GCBC. Guarantor's obligations and liability under this Agreement shall be on a "solidary" or "joint and several" basis along with Obligor to the same degree and extent as if Guarantor had been and/or will be a co-principal obligor and/or co-maker of Obligor's Obligations. In the event that there is more than one Guarantor under this Agreement, or in the event that there are other guarantors, endorsers or sureties of all or any portion of Obligor's Obligations, Guarantor's obligations and liability hereunder shall further be on a "solidary" or "joint and several" basis along with such other guarantors, endorsers and/or sureties.

**DURATION OF GUARANTY.** This Agreement and Guarantor's obligations and liability hereunder shall remain in full force and effect until such time as this Agreement may be canceled or otherwise terminated by GCBC under a written cancellation instrument in favor of Guarantor (subject to the automatic reinstatement provisions hereinbelow). Unless otherwise indicated under such a written cancellation instrument, GCBC's agreement to terminate or otherwise cancel this Agreement shall affect only, and shall be expressly limited to, Guarantor's continuing obligations and liability to guarantee Obligor's Obligations incurred, originated and/or extended (without prior commitment) after the date of such a written cancellation instrument; with Guarantor remaining fully obligated and liable under this Agreement for any and all of Obligor's Obligations incurred, originated, extended, or committed to prior to the date of such a written cancellation instrument.

**DEFAULT.** Should any event of default occur or exist under any of Obligor's Obligations in favor of GCBC, Guarantor unconditionally and absolutely agrees to pay GCBC the then unpaid amount of Obligor's Obligations in principal, interest, costs, expenses, attorneys' fees and other fees and charges. Such payment or payments shall be made at GCBC's offices indicated above, immediately following demand by GCBC.

**GUARANTOR'S WAIVERS.** Guarantor hereby waives: (a) Notice of GCBC's acceptance of this Agreement; (b) presentment for payment of Obligor's Obligations, notice of dishonor and of nonpayment, notice of intention to accelerate, notice of acceleration, protest and notice of protest, collection or institution of any suit or other action by GCBC in collection thereof, including any notice of default in payment thereof, or other notice to, or demand for payment thereof, on any party; (c) any right to require GCBC to notify Guarantor of any nonpayment relating to any collateral directly or indirectly securing Obligor's Obligations, or notice of any action or inaction on the part of Obligor, GCBC, or any other guarantor, surety or endorser of Obligor's Obligations, or notice of the creation of any new or additional Obligations subject to this Agreement; (d) any rights to demand or require collateral security from the Obligor or any other person as provided under applicable law; (e) Any right to require GCBC to notify Guarantor of the terms, time and place of any public or private sale of any collateral directly or indirectly securing Obligor's Obligations; (f) any "one action" or "anti-deficiency" law or any other law which may prevent GCBC from bringing any action, including a claim for deficiency, against Guarantor, before or after GCBC's commencement or completion of any foreclosure action, or any action in lieu of foreclosure; (g) any election of remedies by GCBC that may destroy or impair Guarantor's subrogation rights or Guarantor's right to proceed for reimbursement against Obligor or any other guarantor, surety or endorser of Obligor's Obligations, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging Obligor's Obligations; or (h) any disability or other defense of Obligor, or any other guarantor, surety or endorser, or any other person, or by reason of the cessation from any cause whatsoever, other than payment in full of Obligor's Obligations.

**ADDITIONAL COVENANTS.** Guarantor agrees that GCBC may, at its sole option, at any time, and from time to time, without the consent of or notice to Guarantor, or any of them, or to any other party, and without incurring any responsibility to Guarantor or to any other party, and without impairing or releasing any of Guarantor's obligations or liabilities under this Agreement: (a) discharge, release or agree not to sue any party (including, but not limited to, Obligor or any other guarantor, surety, or endorser of Obligor's Obligations), who is or may be liable to GCBC for any of Obligor's Obligations; (b) Alter, renew, extend, accelerate, or otherwise change the manner, place, terms and/or times of

**EXHIBIT 1**

payment or other terms of Obligor's Obligations, or any part thereof, including any increase or decrease in the rate or rates of interest on any of Obligor's Obligations; (c) settle or compromise any of Obligor's Obligations; (d) subordinate and/or agree to subordinate the payment of all or any part of Obligor's Obligations, or GCBC's security rights in any collateral directly or indirectly securing any such Obligations, to the payment and/or security rights of any other present and/or future creditors of Obligor; (e) Apply any payments and/or proceeds to any of Obligor's Obligations in such priority or with such preferences as GCBC may determine in its sole discretion, regardless of which of Obligor's Obligations then remains unpaid; and (f) Enter into, deliver, modify, amend, or waive compliance with, any instrument or arrangement evidencing, securing or otherwise affecting, all or any part of Obligor's Obligations. No course of dealing between GCBC and Obligor (or any other guarantor, surety or endorser of Obligor's Obligations), nor any failure or delay on the part of GCBC to exercise any of GCBC's rights and remedies under this Agreement or any other agreement or agreements by and between GCBC and Obligor (or any other guarantor, surety or endorser), shall have the effect of impairing or releasing Guarantor's obligations and liabilities to GCBC, or of waiving any of GCBC's rights and remedies under this Agreement or otherwise. Any partial exercise of any rights and remedies granted to GCBC shall furthermore not constitute a waiver of any of GCBC's other rights and remedies; it being Guarantor's intent and agreement that GCBC's rights and remedies shall be cumulative in nature. Guarantor further agrees that, should Obligor default under any of its Obligations, any waiver or forbearance on the part of GCBC to pursue GCBC's available rights and remedies shall be binding upon GCBC only to the extent that GCBC specifically agrees to such waiver or forbearance in writing. A waiver or forbearance on the part of GCBC as to one event of default shall not constitute a waiver or forbearance as to any other default.

**NO RELEASE OF GUARANTOR.** Guarantor's obligations and liabilities under this Agreement shall not be released, impaired, reduced, or otherwise affected by, and shall continue in full force and effect notwithstanding the occurrence of any event, including without limitation any one or more of the following events: (a) The death, insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution, or lack of authority (whether corporate, partnership or trust) of Obligor (or any person acting on Obligor's behalf), or of any other guarantor, surety or endorser of Obligor's Obligations. (b) Any payment by Obligor, or any other party, to GCBC that is held to constitute a preferential transfer or a fraudulent conveyance under any applicable law, or any such amounts or payment which, for any reason, GCBC is required to refund or repay to Obligor or to any other person.
(c) Any dissolution of Obligor, or any sale, lease or transfer of all or any part of Obligor's assets. (d) Any failure of GCBC to notify Guarantor of the making of additional loans or other extensions of credit in reliance on this Agreement.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Governing Law.** This Agreement shall be governed and construed in accordance with the substantive laws of the State of Texas.

**THE UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, THE GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO GCBC AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED. NO FORMAL ACCEPTANCE BY GCBC IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED** _4-30-_ **, 2014.**

**GUARANTOR:**

X _____
Joshua D. Cornelius

**EXHIBIT 1**

INDIVIDUAL ACKNOWLEDGMENT

UNITED STATES OF AMERICA
STATE OF TEXAS
COUNTY OF Nueces

On this 30 day of April, 2014, before me, a Notary Public duly qualified in and for the state and county aforesaid, personally appeared Joshua D. Cornelius, to me known, who being by me duly sworn, deposes and says that he resides at 874 County Road 461 Alice, TX 78332, that he signed the foregoing document as his free act of deed, intending to be bound thereby.

IN TESTIMONY WHEREOF, I have hereunto set my hand in the State of Texas, County of Nueces, on the 30 day of April, 2014.

Notary Public
Print name:
My commission expires:

Cassandre Thomas
My Commission Expires
01/10/2015

**EXHIBIT 1**

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | C-VAC, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | SOUTHERN District of TEXAS |
| Case number | 15-20428 |

Clerk, U.S. District Court
Southern District of Texas
FILED

MAR 1 5 2016

David J. Bradley, Clerk of Court

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
GULF COAST BANK AND TRUST COMPANY
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
GULF COAST BANK AND TRUST COMPANY
Name
1110 HIGHWAY 190, 2ND FLOOR
Number     Street
COVINGTON     LA     70433
City            State      ZIP Code

Contact phone 985-249-7201
Contact email wadehladky@gulfbank.com

Where should payments to the creditor be sent? (if different)

Name _____
Number     Street
City            State      ZIP Code

Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                                   MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                              Proof of Claim                              page 1

EXHIBIT 2

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __3__ __6__ __9__ __2__

**7. How much is the claim?** $ __569,843.75__ . Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

COMMERCIAL LOAN

**9. Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe: SEE UCC-1 ATTACHMENT AS EXHIBIT A.

**Basis for perfection:** FILED UCC-1 FINANCING STATEMENT
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ __N/A__
Amount of the claim that is secured: $ __569,843.75__
Amount of the claim that is unsecured: $ __569,843.75__ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ __0.00__

Annual Interest Rate (when case was filed) __12.00__ %
☐ Fixed
☑ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

Official Form 410 — Proof of Claim — page 2

**EXHIBIT 2**

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. Check one: | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☒ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  03/11/2016
                  MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | WADE | M. | HLADKY |
|---|---|---|---|
| | First name | Middle name | Last name |

Title: VICE PRESIDENT

Company: GULF COAST BANK AND TRUST COMPANY
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 1110 HIGHWAY 190, 2ND FLOOR
Number    Street
COVINGTON,                                          LA         70433
City                                                State      ZIP Code

Contact phone  985-249-7201        Email  wadehladky@gulfbank.com

EXHIBIT A

14-0013934297
05/02/2014 05:00 PM

FILED
TEXAS
SECRETARY OF STATE
SOS

542182180016

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company   1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
86651121 - 364920
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

RECEIVED
MAY 2 2014
CLK 79

Filed In: Texas (S.O.S.)

N4

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| C VAC, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. BOX 4172 | ALICE | TX | 78333 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Gulf Coast Bank & Trust Company | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1110 Highway 190, 2nd Floor | Covington | LA | 70433 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
See attached Exhibit "A"

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: 86651121

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

**EXHIBIT 2**

**Exhibit A Collateral**

**Description**

The word "Collateral" means individually, collectively and interchangeably any and all of Borrower's present and future rights, title and interest in and to the following described property, together with any and all present and future additions thereto, substitutions therefor, and replacements thereof:

| YEAR | MAKE | MODEL | VIN | CLASS | Value | UNIT # |
|------|------|-------|-----|-------|-------|--------|
| 2013 | Kenworth | T800 | 1XKDD40X8DJ360258 | 404990 | 104,000 | 520 |
| 2013 | Kenworth | T800 | 1XKDD40XXDJ360259 | 404990 | 104,000 | 521 |
| 2013 | Kenworth | T800 | 1XKDD40X4DJ360256 | 404990 | 104,000 | 522 |
| 2013 | Kenworth | T800 | 1XKDD40X7DJ360252 | 404900 | 104,000 | 523 |
| 2013 | Kenworth | T800 | 1XKDD40X6DJ360260 | 404900 | 104,000 | 524 |
| 2013 | Clements | End Dump | 5C2BB3489DM008713 | 674290 | 37,000 | T-520 |
| 2013 | Clements | End Dump | 5C2BB34B2DM008715 | 674290 | 37,000 | T-521 |
| 2013 | Clements | End Dump | 5C2BB34B7DM008712 | 674290 | 37,000 | T-522 |
| 2013 | Clements | End Dump | 5C2BB34B0DM008714 | 674290 | 37,000 | T-523 |
| 2013 | Clements | End Dump | 5C2BB34B4DM008716 | 674290 | 37,000 | T-524 |
| 2012 | Shop Made | Open Top | C-001 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-002 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-003 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-004 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-005 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-006 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-007 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-008 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-009 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-010 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-011 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-012 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-013 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-014 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-015 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-016 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-017 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-018 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-019 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-020 | [illegible] | 12,000 | [illegible] |
| 2012 | Shop Made | Open Top | C-21 | [illegible] | 12,000 | [illegible] |

**All Inventory, equipment, chattel paper, accounts, payment intangibles, letter of credit rights, deposit accounts, investment property, contract rights, intellectual property, general intangibles and fixtures.**

The Collateral includes any and all of Borrower's present and future inventory (including consigned inventory), related equipment, goods, merchandise and other items of personal property, no matter where located, of every type and description, including without limitation any and all of Borrower's present and future items of retail inventory; all raw materials, components, work-in-process, finished items, packing and shipping materials, containers, items held for sale, items held for lease, items for which Borrower is lessor, goods to be furnished under contract for services, materials used or consumed in Borrower's business, whether held by Borrower or by others, and all documents of title, warehouse receipts, bills of lading, and other documents of every type covering all or any part of the foregoing, and any and all additions thereto and substitutions or replacements therefor, and all accessories, attachments, and accessions thereto, whether added now or later, and all products and proceeds derived or to be derived therefrom, including without limitation all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement, or other process, and any and all present and future accounts, contract rights, chattel paper, instruments, documents, and

17

**EXHIBIT 2**

notes that may be derived from the sale, lease or other disposition of any of the foregoing, and any rights of Borrower to collect or enforce payment thereof, including any letter of credit rights in connection therewith, as well as to enforce any guarantees of the forgoing and security therefor, and all of Borrower's present and future general intangibles in any way related or pertaining to the ownership, operation, use, or collection of any of the foregoing, including without limitation Borrower's books, records, files, computer disks and software, and all rights that Borrower may have with regard thereto. Inventory includes inventory temporarily out of Borrower's possession or custody and all returns on accounts, chattel paper and instruments.

The Collateral includes any and all of Borrower's present and future chattel paper, equipment leases, retail installment contracts, notes and chattel mortgages, notes and security agreements, instruments, documents, payment intangibles, and all other similar obligations and indebtedness that may now and in the future be owed to or held by Borrower from whatever source arising, and all monies and proceeds payable thereunder, and all of Borrower's rights and remedies to collect and enforce payment and performance thereof, as well as to enforce any guaranties of the foregoing and security therefor, and all of Borrower's present and future rights, title and interest in and with respect to the goods or other property that may give rise to or that may secure any of the foregoing, including without limitation Borrower's insurance rights with regard thereto, and any and all present and future letter of credit rights, payment intangibles or other general intangibles of Borrower in any way related or pertaining to any of the foregoing, including without limitation Borrower's account ledgers, books, records, files, computer disks and software, and all rights that Borrower may have with regard thereto.

The Collateral includes any and all of Borrower's present and future accounts, accounts receivable, health care insurance receivables, other receivables, contract rights, instruments, payment intangibles, documents, notes, and all other similar obligations and indebtedness that may now and in the future be owed to or held by Borrower from whatever source arising, and all monies and proceeds payable thereunder, and all of Borrower's rights and remedies to collect and enforce payment and performance thereof, as well as to enforce any guaranties of the foregoing and security therefor, and all of Borrower's present and future rights, title and interest in and with respect to the goods, services, and other property that may give rise to or that may secure any of the foregoing, including without limitation Borrower's insurance rights with regard thereto, and all present and future letter of credit rights, payment intangibles and other general intangibles of Borrower in any way related or pertaining to any of the foregoing, including without limitation Borrower's account ledgers, books, records, files, computer disks and software, and all rights that Borrower may have with regard thereto.

The Collateral includes any and all of Borrower's now owned and hereafter acquired equipment, machinery, furniture, furnishings and fixtures of every type and description, and all accessories, attachments, accessions, substitutions, replacements and additions thereto, whether added now or later, and all proceeds derived or to be derived therefrom, including without limitation any equipment purchased with the proceeds, and all insurance proceeds and refunds of insurance premiums, if any, and any sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement or other process, and any and all present and future chattel paper, instruments, notes and monies that may be derived from the sale, lease or other disposition of any of the foregoing, any rights of Borrower to collect or enforce payment thereof as well as to enforce any guaranties of the foregoing and security therefor, and all present and future general intangibles of Borrower in any way related or pertaining to the ownership, operation, or use of the foregoing, and any rights of Borrower with regard thereto.

The Collateral includes all general intangibles, payment intangibles, letter of credit rights, intellectual property, tort claim and causes of action and all other intangible personal property and rights of Borrower of every nature and kind, now owned or hereafter acquired, including without limitation corporate or other business records, inventions, designs, blueprints, plans, specifications, patents, patent applications, trade marks, trade names, service marks, trade secrets, goodwill, copyrights, registrations, licenses, franchises, tax refund claims, insurance proceeds, including without limitation insurance covering the lives of key employees on which Borrower is beneficiary, and any letter of credit, letter of credit right, guaranty, claim, security interest, or other security held or granted to Borrower to secure payment of any indebtedness.

**EXHIBIT 2**

The Collateral includes all of Borrower's present and future deposit accounts and certificates of deposits, wherever maintained (with the exception of IRA, pension, and other tax-deferred deposits).

The Collateral includes all of Borrower's present and future investment property, including all securities (whether certificated or uncertificated) and securities entitlements, now owned or hereafter acquired, including any rights of Borrower to enforce same.

The Collateral includes any and all of Borrower's now owned or hereafter acquired fixtures and other real estate related goods, furnishings and accessories, and all attachments, accessions, substitutions, replacements and additions thereto or therefor, whether added now or later, and all proceeds derived or to be derived therefrom, including without limitation any fixtures purchased with the proceeds, and all insurance proceeds and refunds of insurance premiums, if any, and any sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement or other process, and any and all present and future accounts, chattel paper, instruments, notes and monies that may be derived from the sale, lease or other disposition of any of the foregoing.

The word "Collateral" also includes any and all present or future parts, accessories, attachments, additions, accessions, substitutions and replacements to and for the collateral. The word "Collateral" further includes any and all of Borrower's present and future rights to any proceeds derived or to be derived from the sale, lease, damage, destruction, insurance loss, expropriation and other disposition of the collateral, or that otherwise constitute "proceeds" under applicable law, including without limitation, any and all of Borrower's rights to enforce collection and payment of such proceeds.

19

**EXHIBIT 2**

GULF COAST BANK AND TRUST CO
200 ST CHARLES AVE
NEW ORLEANS, LA 70130

C VAC LLC
874 COUNTRY RD 461
ALICE TX 78332

## Loan Payoff Statement

| | | |
|---|---|---|
| Loan Payoff for: | Loan Number: | 153692 |
| C VAC LLC | Date Quoted: | Mar 10, 2016 |
| 874 COUNTRY RD 461 | Payoff Good To: | Mar 15, 2016 |
| ALICE TX 78332 | Method: | 6/0 |

Collateral: 10 TRUCKS (SEE SCHEDULE)

| | |
|---|---|
| Principal: | $530,754.08 |
| Interest To Mar 15, 2016: | $27,239.67 |
| Late Charges: | $11,850.00 |
| **Net Amount Due:** | **$569,843.75** |

## Additional Information

| | |
|---|---|
| One Day's Interest: | $180.60 |

https://dsmwr2navfarm2.fmwrdc.com/CLC_CLC1151/CLC1151.aspx?&Action=PAYOFFSTATEMENT

EXHIBIT 2

## Payment Billed

| | | |
|---|---|---|
| Current Billed Due Date: | Nov 15, 2015 | Principal Billed Through: | Mar 15, 2016 |
| Current Payment Billed: | $23,700.00 | Total Payment Billed: | $110,600.00 |
| Current Principal Billed: | $14,241.72 | Total Principal Billed: | $71,510.29 |
| Current Interest Billed: | $5,508.28 | Total Interest Billed: | $27,239.71 |
| Current Insurance Billed: | $0.00 | Total Escrow Billed: | $0.00 |
| Current Escrow Billed: | $0.00 | Total Other Escrow Billed: | $0.00 |
| Current Other Escrow Billed: | $0.00 | Total Insurance Billed: | $0.00 |
| Current Late Charge Billed: | $3,950.00 | Total Late Charge Billed: | $11,850.00 |
| Current Fees Billed: | $0.00 | Total Fees Billed: | $0.00 |

## Billing History

| Due Date | Billing Date | Principal | Interest | Escrow | Late Charge | Total | Completed |
|---|---|---|---|---|---|---|---|
| Mar 15, 2016 | Feb 29, 2016 | $14,512.49 | $5,237.51 | $0.00 | $1,975.00 | $21,725.00 | No |
| Feb 15, 2016 | Feb 01, 2016 | $14,151.28 | $5,598.72 | $0.00 | $1,975.00 | $21,725.00 | No |
| Jan 15, 2016 | Dec 31, 2015 | $14,162.34 | $5,587.66 | $0.00 | $1,975.00 | $21,725.00 | No |
| Dec 15, 2015 | Nov 30, 2015 | $14,442.46 | $5,307.54 | $0.00 | $1,975.00 | $21,725.00 | No |
| Nov 15, 2015 | Nov 02, 2015 | $14,241.72 | $5,508.28 | $0.00 | $3,950.00 | $23,700.00 | No |
| Oct 15, 2015 | Sep 30, 2015 | $14,299.47 | $5,450.53 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| Sep 15, 2015 | Aug 31, 2015 | $13,977.96 | $5,772.04 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| Aug 15, 2015 | Jul 31, 2015 | $13,830.43 | $5,919.57 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| Jul 15, 2015 | Jun 30, 2015 | $13,882.56 | $5,867.44 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| Jun 15, 2015 | Jun 01, 2015 | $13,551.49 | $6,198.51 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| May 15, 2015 | Apr 30, 2015 | $13,615.31 | $6,134.69 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| Apr 15, 2015 | Mar 31, 2015 | $13,278.23 | $6,471.77 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| Mar 15, 2015 | Mar 02, 2015 | $13,776.32 | $5,973.68 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| Feb 15, 2015 | Feb 02, 2015 | $12,992.44 | $6,757.56 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| Jan 15, 2015 | Dec 31, 2014 | $12,791.16 | $6,958.84 | $0.00 | $3,950.00 | $23,700.00 | Yes |
| Dec 15, 2014 | Dec 01, 2014 | $12,957.13 | $6,792.87 | $0.00 | $1,975.00 | $21,725.00 | Yes |
| Nov 15, 2014 | Oct 31, 2014 | $12,575.31 | $7,174.69 | $0.00 | $1,975.00 | $21,725.00 | Yes |
| Oct 15, 2014 | Sep 30, 2014 | $12,671.78 | $7,078.22 | $0.00 | $1,975.00 | $21,725.00 | Yes |

## Payments Past Due

| | 1-29 Days | 30-59 Days | 60-89 Days | 90+ Days | Total |
|---|---|---|---|---|---|
| Current Amount: | $19,750.00 | $19,750.00 | $19,750.00 | $19,750.00 | $79,000.00 |
| Current Payments: | 1 | 1 | 1 | 1 | 4 |
| LTD Payments: | 8 | 1 | 1 | 1 | 11 |

**EXHIBIT 2**